UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DAVID BELL,

                                    Plaintiff,

        -against-                                            7:12-CV-1813 (LEK)

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                                    Defendant.
_____

## MEMORANDUM-DECISION and ORDER

## I.    INTRODUCTION

        This case has proceeded in accordance with General Order 18, which sets forth the

procedures to be followed in appealing a denial of Social Security benefits.  Both parties have filed

briefs.  Dkt. Nos. 11 ("Plaintiff's Brief"); 12 ("Defendant's Brief").  For the following reasons, the

judgment of the Social Security Administration ("SSA") is affirmed.

## II.    BACKGROUND

### A.  Plaintiff's Medical Records

        On July 5, 2007, the alleged onset date of Plaintiff David Bell's ("Plaintiff") disability,

Plaintiff fell off a ladder at work, resulting in injury to his right knee.  Dkt. No. 9 ("Record") at 32.[1]

On July 8, 2007, Plaintiff was treated at the Massena Memorial Hospital Emergency Room for pain

and swelling associated with his right knee.  R. at 155-62.  Plaintiff was given an x-ray, which

revealed a small joint effusion in his right knee, and prescribed over-the-counter pain medication.

R. at 160, 162.  Upon discharge, Plaintiff was referred to Dr. Roger Sullivan for a follow-up

_____

        [1] Citations to the Record are to the pagination assigned by the SSA.

appointment. R. at 162. Dr. Sullivan ordered an MRI of Plaintiff's right knee on July 11, 2007,

which revealed a large joint effusion and lateral subluxation of the patella with areas of high-signal

seen in the distal aspect of the patella tendon compatible with sprain and partial tear.[2] R. at 163.

Plaintiff sought treatment for his right knee with Dr. Bedros Bakirtzian on August 7, 2007.

R. at 168. Dr. Bakirtzian performed arthroscopic surgery on Plaintiff's right knee on August 13,

2007, for retrieval of a loose body and partial lateral meniscectomy. R. at 165-66. Upon Plaintiff's

readmission to the hospital for a second surgery, Dr. Bakirtzian noted that Plaintiff complained of

right knee pain but had full range of motion. R. at 176. Dr. Bakirtzian performed a second

arthroscopic surgery on Plaintiff's right knee on January 30, 2008, for a resection of the medial plica

as well as multiple synovial biopsies. R. at 174-75. Dr. Bakirtzian noted that Plaintiff had pain in

his lower back in addition to limited range of motion in his right knee. R. at 198, 200. Dr.

Bakirtzian prescribed medication and physical therapy, and concluded that Plaintiff could return to

work by the end of August 2007. R. at 200-01. On December 17, 2008, Dr. Bakirtzian diagnosed

Plaintiff with arthritis. R. at 198. On March 13, 2009, Dr. Bakirtzian concluded that Plaintiff had a

partial, 50% disability due to weakness of muscle, but also noted that Plaintiff had full range of

motion in his knee. R. at 193, 195. Later, on September 1, 2009, Dr. Bakirtzian again assessed

Plaintiff at a 50% impairment due to pain in his right knee, but noted that Plaintiff did have

---

[2] A joint effusion is a build-up of fluid in a patient's joint, usually caused by trauma, overuse, or an underlying condition. Common symptoms include pain, swelling, and stiffness. Mayo Clinic Staff, Diseases and Conditions: Water On the Knee, MAYO CLINIC (June 16, 2012), http://www.mayoclinic.org/diseases-conditions/water-on-the-knee/basics/definition/con-20026072. A subluxation of the patella is a partial dislocation of the bone in the knee. Common symptoms include pain, swelling, and difficulty walking. C. Benjamin Ma, Kneecap Dislocation - Aftercare, NATIONAL INSTITUTE OF HEALTH (last modified Aug. 16, 2012), http://www.nlm.nih.gov/medlineplus/ency/patientinstructions/000585.htm.

symmetrical flexion and extension in both knees.  R. at 191.  In the same assessment, Dr. Bakirtzian also noted that Plaintiff was looking for work.  Id.

      As required by his Workers' Compensation claim, Plaintiff underwent multiple Independent Medical Examinations ("IME"), which were performed by Dr. George Mina.  R. at 184-88, 204-05. In his June 2, 2008, IME, Dr. Mina diagnosed Plaintiff with status post arthroscopic partial lateral meniscectomy, partial synovectomy, and right knee with residual non-specific synovitis.  R. at 185. Dr. Mina concluded that Plaintiff's range of motion was "good," that Plaintiff had a moderate disability (50% partial/temporary), and that Plaintiff could return to work with the restriction of avoiding lifting more than twenty pounds and squatting.  Id.  At Plaintiff's second IME on December 18, 2008, Dr. Mina concluded that Plaintiff had reached maximum medical treatment and could return to work with the restriction of avoiding excessive squatting and kneeling, and lifting more than thirty to forty pounds only occasionally.  R. at 188.  Dr. Mina further concluded that Plaintiff had a "mild, partial" disability.  Id.  After Plaintiff's third IME on September 29, 2009, Dr. Mina again concluded that Plaintiff could return to work with the limitation of avoiding lifting more than twenty pounds and squatting, and that Plaintiff's disability was "partial mild."  R. at 205.  Dr. Mina also noted that Plaintiff displayed "hardly any positive objective findings" in his right knee. Id.

      Between September 2, 2009, and December 7, 2009, Plaintiff received chiropractic treatment from Dr. Robert Klein.  R. at 216-30.  The Record only contains two documented instances of Plaintiff receiving chiropractic treatment, specifically on September 9, 2009, and December 7, 2009.  R. at 226, 229.  In those two reports, Dr. Klein opined that Plaintiff was limited to lifting, carrying, pushing, and pulling ten pounds occasionally and five pounds frequently, and

could only stand or walk less than two hours in a workday. R. at 219-20. Plaintiff testified at his hearing that he received chiropractic treatment from Dr. Klein twice a week for a year. R. at 34.

On October 27, 2009, Plaintiff was examined by Dr. David Welch as part of an SSA examination. R. at 206. Dr. Welch determined that Plaintiff's range of motion of his neck and upper extremities was normal, although "diffusely uncomfortable." R. at 206-07. Dr. Welch also noted that Plaintiff's back had "a long kyphotic curve with a loss of normal lumbar lordosis" and that Plaintiff was unable to lie prone and could only achieve a partially upright position. R. at 207. However, Dr. Welch noted that Plaintiff's straight leg raising was sixty degrees for both legs with only slight limitation. Id. Plaintiff only had a loss of ten degrees of internal rotation and five degrees of external rotation in his right hip, while his left hip was normal. Id. Plaintiff had full extension to at least 120 degrees of flexion in both knees with no evidence of instability. Id. Dr. Welch ordered an x-ray of Plaintiff's knee which revealed no evidence of fracture, joint effusion, degenerative changes, or osteochondral defects. R. at 208.

On January 21, 2010, the state agency physician Dr. D. White reviewed Plaintiff's medical records and concluded that Plaintiff was able to perform light work, including lifting twenty pounds and standing, walking, and sitting six hours out of an eight hour workday, with a restriction on crawling, kneeling, climbing scaffolds, ropes, ladders, and anything more than occasional crouching. R. at 231-32.

On April 14, 2011, Dr. Sullivan diagnosed Plaintiff with lumbago and cervicalgia, prescribed Vicodin, and ordered an MRI. R. at 256, 258. Medicaid did not permit Plaintiff to receive the ordered MRI. R. at 256. On June 28, 2011, Plaintiff followed up with Dr. Sullivan with a complaint of left elbow pain for which he was prescribed Prednisone, but otherwise had no

4

complaints or issues. R. at 256. From an MRI taken on July 12, 2011, Dr. Sullivan diagnosed

Plaintiff with spondylosis deformans and disc disease at several layers causing neural foraminal

stenosis and nerve root displacement. R. at 278-79. Dr. Sullivan referred Plaintiff to specialist Dr.

Monsey at the Spine Institute of New England, who concluded that Plaintiff displayed signs of mild

degenerative changes, but no evidence of significant neurological impingement, radicuopathy, or

myelopathy. R. at 281.

Between April 20, 2011, and June 28, 2011, Plaintiff attended thirteen physical therapy

sessions at the Massena Memorial Hospital for treatment of his lumbago and cervicalgia. R. at 258-

277. The physical therapy and rehabilitation had limited results for Plaintiff. Id.

On January 21, 2010, Plaintiff underwent a physical residual functional capacity ("RFC")

assessment performed by SSA Single Decision Maker M. Mayer. R. at 234-46. Mayer concluded

that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk

about six hours out of an eight hour workday, sit about six hours out of an eight hour workday, and

push or pull an unlimited amount. R. at 234. Mayer further concluded that Plaintiff could only

occasionally climb ramps and stairs, balance, stoop, or crouch, and that Plaintiff could never climb

ladders, ropes, scaffolds, kneel, or crawl. R. at 234-35.

### B. Procedural History

On September 16, 2009, Plaintiff protectively filed an application for disability insurance

benefits, alleging disability resulting from lower back pain, cervical degenerative disc disease with

spondylosis and facet arthropathy, and right knee pain, with an onset date of July 5, 2007. R. at 97;

Pl.'s Br. at 1. When the SSA denied Plaintiff's application on January 25, 2010, Plaintiff made a

timely request for a hearing before an Administrative Law Judge ("ALJ") on March 5, 2010. R. at

49-51, 54.  On August 3, 2011, Plaintiff appeared with counsel before ALJ Maria Greener and acted as the sole witness testifying as to his disability.  R. at 27-44.

The ALJ issued a decision on October 3, 2011, finding that Plaintiff had not engaged in any substantial gainful activity since July 5, 2007, the alleged onset date of disability.  R. at 11-20. While the ALJ found that Plaintiff had severe impairments of mild mid to lower cervical degenerative disc disease with spondylosis and facet arthropathy, right knee injury in July 2007, and lumbago diagnosed in April 2011, the ALJ also found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404(P) Appendix I.  R. at 13, 16.  The ALJ found that Plaintiff had a RFC to perform the full range of light work as defined by 20 C.F.R. § 404.1567(b), including lifting and/or carrying twenty pounds occasionally, ten pounds frequently, standing and/or walking about six hours in an eight-hour workday, sitting about six hours in an eight-hour workday, with no climbing ladders, ropes or scaffolds, no kneeling or crawling, and only occasionally crouching.  R. at 16.  The ALJ stated that Plaintiff's impairments prevented him from performing any of his past relevant work.  R. at 19.  However, given Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  Id.  Therefore, the ALJ concluded that Plaintiff was not disabled by the standards set forth in the Social Security Act between July 5, 2007, and October 3, 2011.  R. at 20.

Plaintiff filed a request for review on December 1, 2011.  R. at 7.  On October 23, 2012, the Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the SSA Commissioner ("Commissioner").  R. at 1.  Plaintiff timely filed an appeal on December 11, 2012.  Dkt. No. 1 ("Complaint").

## III.    LEGAL STANDARD

### A.  Standard of Review

When the Court reviews the SSA's final decision, it determines whether the ALJ applied the correct legal standards and if her decision is supported by substantial evidence in the Record.  42 U.S.C. § 405(g); Roat v. Barnhart, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010) (Kahn, J.) (citing Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982)).  Substantial evidence amounts to "more than a mere scintilla," and it must reasonably support the decision maker's conclusion.  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  The Court defers to the Commissioner's decision if it is supported by substantial evidence, "'even if it might justifiably have reached a different result upon a *de novo* review.'"  Sixberry v. Colvin, No. 12-CV-1231, 2013 WL 5310209, at *3 (N.D.N.Y. Sept. 20, 2013) (quoting Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984)).  However, the Court should not uphold the ALJ's decision when it is supported by substantial evidence, but it is not clear that the ALJ applied the correct legal standards.  Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

### B.  Standard for Benefits

According to SSA regulations, disability is "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 404.1505(a).  An individual seeking disability benefits "'need not be completely helpless or unable to function.'"  De Leon v. Sec'y of Health & Human Servs., 734 F.2d 930, 935 (2d Cir. 1984) (quoting Gold v. Sec'y of Health, Educ. & Welfare, 463 F.2d 38, 41 n.6 (2d Cir. 1972)).

In order to receive disability benefits, a claimant must satisfy the requirements set forth in the SSA's five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(1). In the first four steps, the claimant bears the burden of proof; at step five, the burden shifts to the SSA. Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (quoting Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996)). The five-step analysis used by the SSA is sequential, meaning that the determination at each step dictates whether the analysis proceeds to the subsequent step. Gennardo v. Astrue, 333 F. App'x 609, 610 (2d Cir. 2009). If the SSA is able to determine that the claimant is disabled or not disabled at any step, the evaluation ends. 20 C.F.R. § 404.1520(a)(4). Otherwise, the SSA will proceed with the analysis. Id.

At step one, the SSA considers whether the claimant's current work is "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If it is, the claimant is not disabled under SSA standards. Id. At step two, the SSA considers whether the claimant has a severe medically determinable physical or mental impairment, or combination of impairments that is severe, that meets the duration requirement in 20 C.F.R. § 404.1509. Id. at § 404.1520(a)(4)(ii). If she does not have such an impairment, the claimant is not disabled under SSA standards. Id. At step three, the SSA considers the severity of the claimant's medically determinable physical or mental impairment(s) to see if it meets or equals an impairment and the requisite duration listed in 20 C.F.R. § 404(P), Appendix I. Id. at § 404.1520(a)(4)(iii). If it does not, the SSA moves on to step four to review the claimant's RFC and past relevant work. Id. at § 404.1520(a)(4)(iv). The claimant is not disabled under SSA standards if the RFC reveals that the claimant can perform past relevant work. Id. If the claimant cannot perform her past relevant work, the SSA decides at step five whether adjustments can be made to allow the claimant to work somewhere in a different capacity. Id. at §

404.1520(a)(4)(v). If appropriate work does not exist, then the SSA considers the claimant to be disabled. Id.

## IV.  DISCUSSION

Arguing that the Commissioner's final decision was not based on substantial evidence, Plaintiff claims that the ALJ: (1) failed to consider and include new evidence offered by Plaintiff on the Record, (2) failed to properly assess the severity of Plaintiff's lower back pain, (3) misstated that Plaintiff was looking for work during the period of claimed disability, (4) failed to give proper weight to the medical opinions of Plaintiff's primary treating physician, Dr. Bakirtzian, and (5) failed to properly assess Plaintiff's RFC. Pl.'s Br. at 11-18.

### A.  Consideration and Inclusion of New Evidence Offered by Plaintiff

Plaintiff first argues that the ALJ's decision must be remanded for further development of the Record based on the ALJ's decision not to consider and include in the Record a new medical report from Dr. Terry Knowles and a medical source statement from William R. Norstrom, F.N.P. Id. at 12. The Second Circuit has held that "the Appeals Council . . . will consider new evidence only if (1) the evidence is material, (2) the evidence relates to the period on or before the ALJ's hearing decision, and (3) the Appeals Council finds that the ALJ's decision is contrary to the weight of the evidence, including the new evidence." Rutkowski v. Astrue, 368 F. App'x. 226, 229 (2d Cir. 2010); Perez, 77 F.3d at 45; 20 C.F.R. § 416.1470(b). New evidence provided by a claimant will be accepted into the record "only to the extent that it relates to the time frame encompassed in the ALJ's decision." Baladi v Barnhart, 33 F. App'x 562, 564 (2d Cir. 2002). Furthermore, Appeals Council procedures state that evidence that does not relate to the adjudicated period will not be accepted or added to the record. 20 C.F.R. § 404.976(b)(1). Such evidence will be properly

returned to the offering party with an explanation as to why the evidence was not accepted and with a reminder of the claimants right to file a new application. Id.

The ALJ correctly returned the two documents submitted by Plaintiff because the documents did not relate to the time period being considered in this case. Specifically, the ALJ was to consider the time period of July 5, 2007, the alleged onset date of Plaintiff's disability, through October 3, 2011, the date of the ALJ's decision. R. at 20, 28. The medical source statement from Dr. Terry Knowles was dated August 14, 2012, and the medical source report from William R. Norstrom, F.N.P., was dated March 31, 2012. R. at 2. The Appeals Council reviewed the records and concluded that both records referred to limitations which began in November 2011. Id. Thus, although the records would be relevant in a new application for benefits, neither of the documents submitted by Plaintiff related to the adjudicated period. Therefore, the Appeals Council properly complied with the law and returned the documents to Plaintiff with an explanation to that effect. Id.

Given that the two medical source statements in question were not added to the Record, it is difficult to determine on appeal whether the Appeals Council committed an error of fact in deciding that the two documents did not relate to the adjudication period. However, as discussed in further detail *infra* Part E, the substantial weight of evidence supports the ALJ's decision. Thus, even if the Appeals Council erroneously determined that the two reports did not relate to the adjudicated period, such error would be harmless unless the two reports somehow undermined the substantial evidence the ALJ relied upon in her decision. Even if the two reports in combination provided substantial evidence to support the conclusion that Plaintiff was disabled—which is unlikely given that one of the reports was from a Family Nurse Practitioner, an unacceptable medical source, 20 C.F.R. § 404.1513; Rockwood v. Astrue, 614 F. Supp. 2d 252, 270 (N.D.N.Y 2009)—the Court

10

must uphold an ALJ's decision if supported by substantial evidence, even if substantial evidence also supports a contrary finding. <u>Valente</u>, 733 F.2d at 1041; <u>Campbell v. Astrue</u>, 465 F. App'x 4, 5 (2d Cir. 2012).

Barring some unforseen medical finding within the two additional medical reports that undermines the substantial evidence the ALJ relied upon in her decision, and which Plaintiff failed to describe in his brief, even if the Appeals Council committed an error of fact in deciding to return the evidence, the error would be both harmless and in accordance with the law. Plaintiff has not resubmitted the records in question nor described the allegedly relevant and disabling conditions the records contain, and thus it is impossible for the Court to ascertain their relevance. Since the Appeals Council complied with the law, and the ALJ's decision is otherwise supported by substantial evidence, <u>see</u> discussion <u>infra</u> Part E, there is no reason to overturn the ALJ's decision based on the failure to include the two reports in the Record.

**B. Assessment of the Severity of Plaintiff's Lower Back Pain**

Plaintiff next contends that the ALJ erred when assessing the severity of Plaintiff's lower back pain as part of the second step in the SSA's five-step analysis of disability claims. Pl.'s Br. at 12-15. To determine if a claimant suffers from a severe impairment, the ALJ must consider whether the claimant has any condition or conditions which "significantly limits [his or her] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Furthermore, to be considered disabling, the condition must be expected to result in death or must have lasted or be expected to last at least twelve continuous months. 42 U.S.C. § 423(d)(1)(A).

Plaintiff argues that the ALJ was inconsistent in her findings regarding Plaintiff's lower back pain and that the ALJ improperly assessed the severity of Plaintiff's medical conditions. Pl.'s Br. at

14-15.  Furthermore, Plaintiff argues that the ALJ failed to consider all relevant medical evidence when assessing the severity of Plaintiff's impairments, namely by allegedly misstating the frequency of Plaintiff's treatment with chiropractor Dr. Robert Klein and by suggesting that Plaintiff's lumbago had not lasted for a continuous period of twelve months after citing Plaintiff's treatment record.  Id. at 14.

Plaintiff's contention that the ALJ was inconsistent and improperly assessed the severity of his medical impairments is unfounded.  Not only did the ALJ specifically state that Plaintiff's impairments were severe as part of her analysis in step two, the ALJ also proceeded with the remaining three steps of the analysis operating under the premise that Plaintiff did in fact meet the requirements of step two.  R. at 13.  Had the ALJ found that Plaintiff did not meet the severity requirement of step two, there would have been no reason for the analysis to proceed any further.  Gennardo, 333 F. App'x at 610; 20 C.F.R. § 404.1520(a)(4).  Thus, even if the phrasing of the ALJ's decision was inconsistent, or even if the ALJ erred in determining the duration or the expected duration of Plaintiff's lumbago, it would be harmless error given that the ALJ proceeded with the analysis and continued to consider all of Plaintiff's impairments in the rest of the analysis, including Plaintiff's complaint of lower back pain.  Stanton v. Astrue, 370 F. App'x 231, 233 n.1 (2d Cir. 2010); Reices-Colon v. Astrue, 523 F. App'x 796 (2d Cir. 2013); R. at 17-19.  Furthermore, in determining Plaintiff's RFC, the ALJ relied on medical opinions from physicians—such as Dr. Bakirtzian, Dr. Mina, and Dr. Welch—who all considered Plaintiff's back pain in their evaluations.  E.g., R. at 200, 204, 231-34.  Even taking into account Plaintiff's back pain, every medical professional who provided an acceptable medical source statement for the Record still reached a conclusion which supported the ALJ's determination of Plaintiff's RFC.  See discussion infra Part

E.

As for the records of Dr. Klein, the ALJ stated that Plaintiff had received chiropractic treatment from Dr. Klein "every one or two weeks" between September 2009 and December 2009. R. at 17. The ALJ acknowledged that Plaintiff testified that he had received chiropractic treatment from Dr. Klein twice a week for a year. Id. at 18. There is no indication that the ALJ found that Plaintiff was treated by Dr. Klein on only two occasions, given that such a conclusion would be contradictory to the ALJ's own statements. The ALJ merely pointed out that the Record contained only two documented instances of Plaintiff receiving treatment from Dr. Klein, specifically on September 2, 2009, and December 7, 2009. Id. at 216-30. Furthermore, even if the ALJ erred in characterizing or weighing the findings and opinions of Dr. Klein, the findings and opinions of chiropractors are not considered to be acceptable medical sources for reaching conclusions on the nature and severity of a claimant's impairment. 20 C.F.R. § 404.1513; Diaz v. Shalala, 59 F.3d 307, 309 (2d Cir. 1995). Thus, the ALJ could not have based a finding of a medical impairment on Dr. Klein's reports even if the ALJ were so inclined.

### C. Representation That Plaintiff Was Looking for Work

Plaintiff argues that the ALJ improperly represented that Plaintiff was capable and looking for work. Pl.'s Br. at 15. Specifically, Plaintiff argues that he only held himself out as looking for work since he was required to do so as part of his Workers' Compensation claim, and therefore the ALJ should not have relied upon his statement that he was looking for work without first identifying the nature of the work being sought. Id. at 15-16. However, Plaintiff does not contest that the Record indicates that on at least two occasions Plaintiff did report to his doctor that he was looking for work. R. at 189, 191. The ALJ was correct in stating that Plaintiff was looking for work based

on the substantial evidence to that effect found in the medical records from Dr. Bakirtzian. Id. The argument that Plaintiff was required to look for work as part of his Workers' Compensation claim does not change the fact that Plaintiff was seeking employment or was at least holding himself out as doing so, which is all the ALJ stated that Plaintiff was doing. Id. Additionally, the ALJ's finding that Plaintiff was able to perform light work was not based solely on his statements to Dr. Bakirtzian that he was seeking employment, but was based almost entirely on substantial medical evidence in the Record. See infra Part IV.E.

### D. Proper Weighing of Plaintiff's Treating Physicians' Opinions

Treating physicians' opinions are to be given controlling weight if they are supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with other substantial evidence on record. Schisler v. Sullivan, 3 F.3d 563, 567 (2d Cir. 1993); 20 C.F.R. § 404.1527(d)(2). Plaintiff argues that the ALJ failed to properly give controlling weight to the medical opinions of Dr. Bakirtzian, Plaintiff's primary treating physician. Pl.'s Br. at 16-18. In support, Plaintiff points out that the ALJ only referenced the reports from Dr. Bakirtzian once in the section of the decision on RFC, and that the ALJ instead referenced the reports of Dr. Mina much more frequently, in spite of the fact that Dr. Mina only saw Plaintiff on three occasions. Id. at 17.

However, this argument completely disregards the fact that the ALJ extensively examined and summarized the reports of Dr. Bakirtzian just a few pages earlier in the decision. R. at 14-15. While it is preferable for an ALJ to expressly state the rationale for her conclusions, the absence of express rationale is not reversible error so long as one is "able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence." Salmini v. Astrue, 371 F. App'x 109, 112 (2d Cir. 2010) (quoting Berry, 675

F.2d at 469).

Furthermore, there is no evidence to indicate that the ALJ disregarded the findings and opinions of Dr. Bakirtzian. Not only did the ALJ summarize the records of Dr. Bakirtzian as part of her decision, but the ALJ's determination of Plaintiff's RFC was entirely consistent with Dr. Bakirtzian's records. See discussion infra Part E. Therefore, even if the ALJ improperly weighed the findings and opinions of Dr. Bakirtzian, it would be harmless error, as the ALJ's ultimate conclusion is wholly consistent with Dr. Bakirtzian's findings and conclusions on the Record.

Finally, opinions of non-examining physicians can be considered substantial evidence when consistent with other medical evidence on the record. Diaz, 59 F.3d at 313 n.5 ("[SSA Regulations] permit the opinions of nonexamining sources to override treating sources' opinions provided they are supported by evidence in the record."). The ALJ did not override any treating physicians' opinions, such as those of Dr. Bakirtzian, with the opinions of non-treating physicians, such as those of Dr. Mina. Nonetheless, the conclusion in Diaz supports the ALJ's decision to give weight to the non-treating physicians' opinions in this case, such as Dr. Mina's opinions, especially given those opinions' consistencies with other evidence on the Record, including the opinions of Plaintiff's treating physicians. The only medical evidence which is not entirely consistent with the ALJ's determination of Plaintiff's RFC was from the chiropractor Dr. Klein. As noted previously, chiropractors are not acceptable medical sources for conclusions regarding the nature and severity of a plaintiff's impairment. 20 C.F.R. § 404.1513; Diaz, 59 F.3d at 309. With the exception of Dr. Klein, a non-medical source, every medical professional in the Record who treated or evaluated Plaintiff is in agreement regarding the nature and severity of Plaintiff's disability. See discussion infra Part E.

**E. Assessment of Plaintiff's Residual Function Capacity (RFC)**

Finally, Plaintiff argues that the ALJ failed to properly assess Plaintiff's RFC. Pl.'s Br. at 18-20. Specifically, Plaintiff argues that the ALJ's determination that Plaintiff could perform a full range of light work conflicts with the medical and testimonial evidence and is unsupported by substantial evidence. Id. at 20.

Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . [A] good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. . . . [And] the ability to do substantially all of these [listed] activities." 20 C.F.R. § 416.967(b). As stated in the Social Security Rulings, "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." S.S.R. 83-10, 1983 WL 31251 (Jan. 1, 1983).

The ALJ's finding that Plaintiff could perform light work is entirely consistent with the weight of the evidence in the Record. At an IME on June 2, 2008, Dr. Mina concluded that Plaintiff could return to work with a restriction on squatting or lifting more than twenty pounds and limited to lifting thirty to forty pounds occasionally. R. at 185, 188. On September 29, 2009, Dr. Mina again assessed Plaintiff and concluded that he could return to work with a limitation of lifting no more than twenty pounds and to avoid squatting. R. at 205. In a response to a request for medical advice on January 21, 2010, state medical consultant Dr. D. White concluded that Plaintiff was limited in his ability to lift and carry twenty pounds occasionally and ten pounds frequently, standing or walking about six hours in an eight hour workday, and sitting about six hours in an eight hour workday. R. at 231-32. In a physical RFC assessment, Mayer concluded that Plaintiff could

16

lift twenty pounds occasionally, lift ten pounds frequently, stand or walk about six hours in an eight hour workday, and sit about six hours in an eight hour workday. R. at 234. All three of these reports directly support the ALJ's determination of Plaintiff's RFC.

Additionally, the ALJ's finding that Plaintiff could perform light work is completely consistent with the opinions and findings of Dr. Bakirtzian. No records from Dr. Bakirtzian indicated that Plaintiff was unable to work, and in August 2007, Dr. Bakirtzian stated that he expected Plaintiff to be returning to work by the end of the month. R. at 201. Over the course of his treatment of Plaintiff, Dr. Bakirtzian repeatedly diagnosed Plaintiff with only a "partial disability," "50% disability," or "50% impairment." R. at 189, 191, 193, 195. The Social Security Act does not award benefits for partial or degrees of disability, but rather only for total disability, namely the complete inability to perform any substantial gainful activity. Stephens v. Heckler, 766 F.2d 284, 284 (7th Cir. 1985); Gray v. Chater, 903 F. Supp. 293, 300-01 (N.D.N.Y. 1995); Montaque v. Astrue, No. 07-CV-0749, 2010 WL 1186515, at *7 (N.D.N.Y. Mar. 23, 2010); Jones-Reid v. Astrue, 934 F. Supp. 2d 381 (D. Conn. 2012). A treating physician's finding of partial disability is not inconsistent with an ALJ's conclusion of non-disability under the Act. See Vergino v. Apfel, No. 97-CV-456, 1998 WL 743706, at *8 (N.D.N.Y. Oct. 23, 1998) (holding that the plaintiff was not disabled under the Social Security Act even though his treating physician diagnosed him with a partial disability); Pallis v. Bowen, No. 86-CV-2768, 1989 WL 20623, at *4 (E.D.N.Y. Feb. 28, 1989) (holding that the plaintiff was not entitled to Social Security benefits based on his treating physicians' findings of a partial disability). Thus, the ALJ's finding that Plaintiff was not disabled under the Act and was able to perform light work was consistent with Dr. Bakirtzian's findings that Plaintiff had a "partial disability," "50% disability," or "50%

impairment." Therefore, there is substantial medical evidence to support the ALJ's determination that Plaintiff was not disabled and was able to perform a full range of light work.

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the decision of the Commissioner is **AFFIRMED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties.

**IT IS SO ORDERED**.

DATED:      January 15, 2015
            Albany, New York

Lawrence E. Kahn
U.S. District Judge

18